**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3489-21

KEITH ISAAC, deceased,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

ROXANNE ISAAC,

     Intervenor-Respondent.

_____

Argued March 11, 2024 – Decided April 1, 2024

Before Judges Sabatino, Marczyk, and Chase.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx3304.

Eric Andras Carosia argued the cause for appellant (Berkowitz, Lichtstein, Kuritsky, Giasullo & Gross,

LLC, attorneys; Eric Andras Carosia and Stuart Michael Kuritsky, on the brief).

Juliana C. DeAngelis, Legal Counsel, argued the cause for respondent (Nels J. Lauritzen, Deputy Director, Legal Affairs, attorney; Juliana C. DeAngelis, on the brief).

PER CURIAM

This appeal presents legal issues as to whether a decedent police officer's retroactive pension benefits of $208,950.03 were properly paid upon his death to his estranged wife or whether, as the petitioner estate contends, the "retro funds" belong to the estate.

For the reasons that follow, we vacate the pension agency's conclusive determination that decedent made an effective "designation" guiding the disposition of any retro funds under N.J.S.A. 43:16A-12.2 and -12.3. We remand for an evidentiary administrative hearing focused on decedent's probable intent.

I.

We present the following background derived from the record. Decedent Keith Isaac was a lieutenant in the Newark Police Department and a member of the Police and Firemen's Retirement System ("PFRS"). According to the

2

stipulated facts, decedent applied via a web application to the PFRS on March 12, 2013, for a retirement to become effective April 1, 2013.

A critical predicate of the agency's position in this case is that the completed retirement application lists decedent's estranged wife, Roxanne Isaac, as "wife" in a section of the form under the heading "Marital/Survivor Information." The spousal information appears on the form as follows:

**MARITAL / SURVIVOR INFORMATION**

Name: ROXANNE ISAAC          Marital Status: WIFE

SSN Number:  [Left blank]          Date of Birth:  [Left blank]

Address:  [Left blank]

In the rest of the form, decedent designated his children as the beneficiaries of his pension-related life insurance policies, and not his estranged wife.

As it turned out, decedent's retirement application remained pending with the PFRS for over three years. That is because decedent was terminated by the City of Newark in July 2014. Decedent brought a wrongful termination lawsuit against the City. In the meantime, the PFRS tabled action on decedent's retirement application.

In April 2016, decedent settled his lawsuit with the City. The PFRS was provided with a copy of the settlement agreement, and it renewed consideration of his retirement application.

3

At its September 12, 2016 meeting, the PFRS Board of Trustees voted to approve decedent's "special retirement," effective retroactively to an amended date of August 1, 2014, the first of the month after the City had terminated him. In the meantime, decedent had accumulated over $200,000 in retroactive benefits that had not been paid. The Board directed the PFRS retirement staff to implement its decision and pay decedent his benefits. The process required decedent to make additional pension contributions through August 1, 2014. A "final Certification of Service and Salary" document also needed to be supplied by the City. Those additional conditions were then fulfilled.

Decedent died on October 23, 2016, forty-one days after the Board's September 12 meeting. At the time of his death, the PFRS had not yet paid decedent any of the retro funds.

Thereafter, at a December 5, 2016 meeting, the Board re-approved decedent's application for special retirement. The PFRS then notified decedent's wife of her entitlement to pension benefits. It paid her the spousal retirement benefits due as his survivor under N.J.S.A. 43:16A-12.1 (sometimes referred to as the "widow's pension") which the estate has not challenged.[1] The PFRS also

---

[1] In relevant part, N.J.S.A. 43:16A-12.1 prescribes that, upon a PFRS member's death, "there shall be paid to the member's widow or widower a pension of 50%

paid the wife, without simultaneously giving notice to decedent's estate, the sum of over $200,000 in retro benefits.

Decedent's will made no provision for the wife. It conveyed his estate to other heirs.

The estate disputes the payment of the retro benefits to the wife. It argues the retro funds should have been paid, in the ordinary course, to decedent while he was still alive, and that if he had not spent it all, the remaining balance would have been an asset of his estate.

The dispute was referred on stipulated facts to an administrative law judge ("ALJ") in the Office of Administrative Law ("OAL"). The ALJ issued a written decision on April 27, 2022, ruling in favor of the agency's decision to pay the retro funds to the wife. The Board adopted the ALJ's ruling in a one-page letter dated June 15, 2022.

The estate now appeals. The wife, who was represented by counsel before the ALJ, did not file a brief on the appeal.

We consider the issues before us guided by the principle that an appellate court will sustain an agency's decision "unless there is a clear showing that it is

_____

of final compensation for the use of herself or himself, to continue during his or her widowhood." Other aspects of the statutory formula are not pertinent here.

A-3489-21

arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."
Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014)
(quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27
(2011)). "It is well established that the agency's factual determinations are
presumptively correct" and a court, reviewing the facts, "will not substitute its
own judgment over that of an agency where the agency's findings are supported
by sufficient credible evidence." Rooth v. Bd. of Trs., Pub. Emps.' Ret. Sys.,
472 N.J. Super. 357, 365 (App. Div. 2022). However, pure questions of law are
reviewed by this court de novo. Saccone, 219 N.J at 380 (citing Russo, 206 N.J.
at 27).

II.

The linchpins of the analysis of the Board and the ALJ are N.J.S.A.
43:16A-12.2 and -12.3, which provide that a retiree's written designation of a
beneficiary controls who receives unpaid retirement benefits upon the member's
death. In pertinent part, Section 12.2 states:

> Upon the death of a retirant, any unpaid benefits
> due him shall be paid in one lump sum to such person,
> . . . as he shall have nominated by written designation
> duly executed and filed with the board of trustees,
> otherwise to the executor or administrator of the
> retirant's estate.
>
> [(Emphasis added).]

A-3489-21

Relatedly, in addressing the designation of beneficiary and payment of benefits, Section 12.3 provides in pertinent part:

> The <u>designation of beneficiary by a member or retirant shall be made in writing on a form satisfactory to the retirement system, and filed with the retirement system</u>. . . . Any amounts due for which there is <u>no</u> beneficiary at the death of a member, retirant or beneficiary shall be <u>payable to the estate</u> of such member, retirant or beneficiary.
>
> [(Emphasis added).]

The Board and the ALJ considered decedent's March 2013 retirement application form identifying Roxanne Isaac as his wife as comprising such a beneficiary designation. The ALJ described this as the "critical issue" in this case.

After discussing the statutory provisions, the ALJ agreed with the agency's finding that "[i]n accordance with N.J.S.A. 43:16A-12.2, in filing for retirement and <u>listing Roxanne Isaac as his spouse</u>, . . . [decedent] nominated and designated her as his beneficiary." (Alterations in original) (emphasis added). The ALJ concluded the agency's determination that decedent's "<u>identification of Roxanne Isaac as his spouse</u> on his retirement application is an acceptable designation . . . cannot be said to be arbitrary, capricious, unreasonable." (Emphasis added).

A-3489-21

The ALJ found the agency's position was "in harmony with the statutory framework, which provides for future pension benefits to a retired member's spouse and children after his/her death." The ALJ added the agency's position was "further consistent with the statutory and regulatory scheme, which [distributes] benefits to an estate only if there is no other eligible survivor or beneficiary available."

We disagree with this analysis. The retirement application form that decedent completed does not state anywhere that the member who fills it out and who, as requested, <u>identifies</u> the member's spouse, is <u>designating</u> that spouse as the recipient of any pension benefits that may be unpaid at the time of the member's death. The form is barren of any explanatory text that informs the applicant of this supposed equivalency.

In fact, the language within Section 12.3 affording members a right to choose a beneficiary is at odds with the automatic nature of the survivor's pension under Section 12.1. After this appeal was briefed and awaiting oral argument, we requested the Board's counsel to attempt to locate any instructions or Frequently Asked Questions that may have been associated with the retirement application form that decedent submitted via the web on March 12,

8

2013. The Board's counsel helpfully located some materials from that time, including excerpts from the PFRS member handbook.

As explained by the Board's counsel in her certification to this court, the materials show that, unlike members in some other pension systems, PFRS members do not have an "option to designate a beneficiary for the receipt of outstanding uncashed pension checks as of the death of the member in their applications for retirement benefits." Instead, as counsel acknowledges, the PFRS provision at Section 12.1 directs that a statutory benefit "shall be paid" to the surviving spouse upon the death of a member. See N.J.S.A. 43:16A-12.1; see also Saccone, 219 N.J. at 392 (noting the survivor's pension benefit is "automatically provided").

In short, decedent had no ability to steer the widow's portion of his survivor's benefit to anyone else. Accordingly, his identification of his spouse's name[2] on the form should not be over-read to signify that he was choosing her to receive any unpaid pension benefits. Her receipt of the so-called "widow's pension" was automatic under the PFRS statute.

---

[2] Perhaps due to their estrangement, decedent merely listed her name and left blank queries for her address and Social Security number.

Upon due consideration of these circumstances, we cannot uphold the Board's final agency decision, given the present state of the record. There presently is not substantial credible evidence in the stipulated record to support the inference made by the ALJ and the Board.

To resolve the designation issue appropriately, the matter must be remanded for a supplemental hearing in the OAL to explore the probable intent of decedent, or whether he had any intent at all concerning the disposition of any unpaid funds. Hearsay evidence of any statements he may have made on these or related topics may be admissible under N.J.R.E. 804(b)(6) ("trustworthy statements by deceased declarants") and the relaxed hearsay rules used in OAL proceedings, see N.J.A.C. 1:1-15.5(b) (the "residuum" rule for admitting hearsay).

The ALJ shall make a factual determination as to whether decedent likely would have intended his identification of his estranged spouse on the retirement form to convey a desire that she receive any unpaid retirement funds due to him upon his death. If the ALJ concludes that such an intent was probable, the Board's payment of the retro funds to Roxanne Isaac shall be left undisturbed. Conversely, if such an intent was not probable, then the funds are deemed to

belong to the estate, and the Board shall take equitable steps—which we need not specify here—to rectify the mistaken payment.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION